**Kathey Marchand STIPELCOVICH, Individually and as Personal Representative of the deceased Noel F. Stipelcovich, Plaintiff-Appellant,**

v.

**SAND DOLLAR MARINE, INC., et al., Defendants-Appellees.**

No. 85–3656.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1986.

Randy Ungar, Ungar, Wheelahan & Dunn, Thomas E. Dunn, New Orleans, La., for Kathy Marchand Stipelcovich.

James R. Sutterfield, Hunter, Carmouche, Barsh, Hunter, Gray, Hoffman & Gill, Nancy A. Donovan, New Orleans, La., for Charles O. Gibbs.

Phelps, Dunbar, Marks, James Kemp, Jr., New Orleans, La., for Sand Dollar & Marilyn H. Ltd.

Christovick & Kearney, R.K. Christovich, Liane C. King, New Orleans, La., for Union Oil Co., Inc.

Young & Richard, Brad G. Theard, New Orleans, La., for Blocker Drilling & Marine Co.

Thomas M. Richard, Metairie, Richard A. Chopin, Metairie, La., for John Lyle, Inc. & National Union Fire Ins.

Before GEE and HILL, Circuit Judges, and HUNTER [*], District Judge.

ROBERT MADDEN HILL, Circuit Judge:

This appeal requires us to consider whether the district court erred in ruling that a settlement agreement was severable and whether the district court erred by not reinstating the original suit. Finding no error in the district court's actions, we affirm.

## I.

On August 26, 1982, Kathey Stipelcovich filed suit against Sand Dollar Marine, Inc. (Sand Dollar), Marilyn H. Ltd. (Marilyn), Union Oil Company, Inc., and Blocker Drilling and Marine Co., Inc. (Blocker) alleging causes of action under the Jones Act, 46 U.S.C. § 688, and general maritime law for the wrongful death of her husband, Noel Stipelcovich.[1] The complaint was amended naming Union Oil Company of California (Union), Early American Insurance Company (Early American) and Underwriters at Lloyds, London, as additional defendants.

Union filed a third-party claim against John Lyle, Inc., and its insurer, National Union Fire Insurance Company (collectively, Lyle). During the pre-trial phase of the case, the various defendants became aligned into two general groups; the "rig interests" who were comprised of Union, Blocker and Lyle, and the "vessel interests" who were comprised of the remaining defendants.

Prior to the scheduled trial numerous discussions regarding a potential settlement were conducted with Stipelcovich by the two groups. These negotiations finally resulted in a settlement being reached prior to trial. The three defendants comprising the rig interests settled on the Friday afternoon prior to the Monday trial for the sum of $50,000, payable one-third each. At some later time the vessel interests entered into a separate settlement in the amount of $150,000.

On the morning of the scheduled trial, the parties appeared in court to enter the various terms of the settlements into the record. Stipelcovich's counsel indicated to the court that the rig interests settled for a sum of $50,000, and the vessel interests settled for a sum of $150,000. Subsequently, the rig interests defendants each issued a draft in the amount of $16,666.33,[2] and Early American issued a draft for the vessel interests in the amount of $150,000. The parties, however, only executed one written settlement agreement incorporating and releasing all the defendants; the single release was used to avoid duplicity of efforts. The case was then dismissed.

The draft issued by Early American was dishonored when presented for payment because of receivership proceedings over Early American in the Circuit Court of Mont-

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

[1] Noel Stipelcovich was the captain and sole operator of a vessel used to transport individuals and supplies to oil rigs. One evening, while apparently attempting to secure the vessel for the evening, he was lost at sea. His body was never recovered.

[2] Stipelcovich has not accepted the $50,000. It was paid to her original attorney, but she did not accept the money when offered to her. Stipelcovich's present counsel advised her original counsel to tender the money back to the rig interests. However, the record does not reflect that these funds have ever been returned.

gomery County, Alabama. Accordingly, in an attempt to collect the funds owed by the vessel interests under the settlement, on January 3, 1985, Stipelcovich obtained a final consent judgment in the amount of $150,000 against Early American from the district court. Early American was placed in receivership on January 23, 1985, preventing Stipelcovich from executing on the judgment. She still has not collected the settlement proceeds.

Following the employment of new counsel, Stipelcovich filed a Motion to Reinstate Case on April 12, 1985, urging that the settlement had not been complied with by the defendants and seeking to reopen the suit. On October 9, 1985, the district court ruled that there were two separate settlements—one between the rig interests and one between the vessel interests. The court held that these settlement agreements were severable and separately enforceable, and denied the motion to reopen the case. This appeal followed. In our resolution of this appeal we first consider whether the district court's finding that there were two settlement agreements was clearly erroneous. Finding as we do that it was not, then we consider whether each agreement is enforceable on the parties.

## II.

■ Stipelcovich argues that the record shows that the parties entered into only one settlement agreement.[3] The district court instead found, however, that there were two separate settlements. In reviewing the district court's findings,[4] we are governed by Fed.R.Civ.P. 52(a) and the interpretation placed on the rule in *Anderson v. City of Bessemer City*, 470 U.S. 564, 572, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518,

528 (1985), which allows us to reverse the district court only when its findings were clearly erroneous. Based on our review of the record, we conclude that the district court was not clearly erroneous.

■ The only evidence Stipelcovich offered to show a single settlement was that only one settlement agreement and release was executed by all the parties and that this agreement provided that she was to receive $200,000. The evidence and affidavits of counsel offered by the rig and vessel interests shows that four separate drafts for payment were delivered and that all negotiations were couched in terms of two separate settlements. In addition, when the settlement terms were placed in the record on the morning of the trial, Stipelcovich's counsel stated:

> [T]he plaintiff has agreed to settle with the defendant, Early American, Marilyn H. Limited, Sand Dollar Marine, Inc., and John Lyle, Inc. for a sum of a hundred 50 thousand dollars.... The plaintiff has also agreed to settle with the defendant Royal Oil, Union Oil Company of California, Blocker Drilling, John Lyle, Inc., for the sum of 50 Thousand Dollars.

Early American's counsel stated:

> [P]laintiff has agreed to accept a hundred 50 thousand dollars in full and final discharge of all claims plaintiff may have rising from the disappearance of Stipelcovich against Early American Insurance Company, Marilyn H. Limited, Sand Dollar Companies and Lloyds.

Lyle's counsel stated:

> And if Your Honor please, you would probably want the breakdown of the amounts contributed. It is one-third of 50 thousand dollars each, in other words, Union Oil Company of California will pay

---

**3.** Apparently Stipelcovich does so with the goal of proving that since there was only one settlement agreement and that since only one-fourth of the consideration was forthcoming, the agreement was breached and therefore she may obtain relief pursuant to rule 60(b)(6) in regard to all defendants from the judgment of dismissal. This would allow her to reach anew the solvent defendants.

**4.** Since the settlement agreement was executed in Louisiana, Louisiana law governs its interpretation. Under Louisiana law, when a contract is ambiguous, the agreement is to be construed according to the intent of the parties. *Kuswa & Associates v. Thibaut Construction Co.*, 463 So.2d 1264, 1266 (La.1985). The intent of the constructing parties is an issue of fact that is to be inferred from all of the surrounding circumstances.

16 thousand 6 hundred 67 dollars. Blocker Drilling and Marine Inc. will pay a like amount and National Union Fire Insurance Company on behalf of itself and John Lyle, Inc. will also pay the same 16 thousand 6 hundred 67 dollars.

A review of the foregoing convinces us that the district court's finding of two severable and separate settlement agreements is not clearly erroneous.

### III.

■ Stipelcovich contends that the district court erred when it did not reinstate her original suit. For support, Stipelcovich points us to the law of seamen and Fed.R. Civ.P. 60(b). Although Stipelcovich argued for reinstatement as to the rig and vessel interests as a unit, since we hold that there are two agreements, we will examine whether the suit should be reopened as to the rig and vessel interests separately. We first set forth the relevant law. Rule 60(b) provides, in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment,

order, or proceeding was entered or taken.

The purpose of rule 60(b) is to delineate the circumstances when relief is available from the operation of final judgments, whether they are entered by default or otherwise. *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981). The rule attempts to strike a balance between two conflicting goals, the finality of judgments and the command of the court to do justice. *Id.* Thus, "although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Id.* On the one hand, then, rule 60(b) is to be liberally construed to do substantial justice, *Laguna Royalty Co. v. Marsh*, 350 F.2d 817, 823 (5th Cir.1965), but at the same time "[t]his is not to say that final judgments should be lightly reopened." *Seven Elves*, 635 F.2d at 401.

■ The decision concerning a motion to vacate a final judgment pursuant to rule 60(b) is directed to the sound discretion of the district court and will only be reversed if there is an abuse of that discretion. *Roberts v. Rehoboth Pharmacy, Inc.*, 574 F.2d 846, 847 (5th Cir.1978). "It is not enough that the granting of relief might have been permissible, or even warranted—denial must have been so *unwarranted* as to constitute an abuse of discretion." *Seven Elves*, 635 F.2d at 402 (emphasis in original). Since, however, a trial on the merits is favored over a truncated proceeding, *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 895 (5th Cir.1984), where denial of relief precludes a full examination of the merits of the case, a slight abuse of discretion may justify reversal. *Seven Elves*, 635 F.2d at 402.

■ Stipelcovich's argument for reinstatement is based on rule 60(b)(6), which provides for relief from a final judgment for "any other reason justifying relief from the operation of the judgments."[5] Clause

---

**5.** Stipelcovich also alludes to a claim under rule 60(b)(3) that fraud was present in the formulation of the settlement agreements. However, she raises this "allegation" as a basis for not

(6) is a residual clause used to cover unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional circumstances. 7 J. Lucas & J. Moore, Moore's Federal Practice ¶ 60.27[2] at 274 (2d ed. 1985). Our task, then, is to examine the facts surrounding the settlement agreements to see if there is a reason justifying relief.

### A.

■ We first consider the settlement agreement with the vessel interests. Pursuant to this agreement, the various parties comprising the vessel interests were required to pay $150,000 through a draft submitted by Early American. Although Early American did issue a draft in that amount, when presented it was dishonored. Thus, Stipelcovich did not, and still has not, received these funds. This lack of consideration was a material breach of the terms of the settlement agreement.

■ When the settlement agreement was breached Stipelcovich had two remedies available. She could have brought an action to collect the $150,000 due under the settlement, or she could have made a rule 60(b)(6) motion to vacate the prior dismissal and reinstate the case. *See Harman v. Pauley*, 678 F.2d 479, 481 (4th Cir.1982); *Warner v. Rossignol*, 513 F.2d 678, 683 (1st Cir.1975). Stipelcovich elected to collect the $150,000, and she obtained a consent judgment against Early American for that amount. Unfortunately, the Early American receivership proceedings have prevented any collection on the judgment.

■ Having failed in the attempt to collect on the settlement agreement, Stipelcovich now desires to have her original suit reinstated. In this circumstance, however,

we believe that the district court did not abuse its discretion in not granting the rule 60(b)(6) motion. Stipelcovich opted to enforce the terms of the settlement agreement with the vessel interests, acquiring a valid judgment. Having elected to do so, she is now precluded from pursuing her original claim against the vessel interests.[6] *Cf. Harman*, 678 F.2d at 481–82. *See also Burrus v. American Casualty Co.*, 518 F.2d 1267, 1269 (7th Cir.1975) (applying Indiana law).

In *Harman*, following suit, a settlement agreement was entered into between Harman and Pauley, in which Pauley released all claims to certain stocks and personal property and the suit was dismissed. Harman then made a claim to the property; Pauley, in contravention of the agreement, also made claim to the property. Harman filed an action against Pauley alleging a breach of the agreement. He also moved the district court pursuant to rule 60(b)(6) to vacate the dismissal order of the earlier suit. The court denied the motion. The Fourth Circuit affirmed, holding that Harman could obtain the same relief sought by way of his rule 60(b)(6) motion through the suit he had already filed for breach of the agreement and, therefore, the district court did not abuse its discretion in denying rule 60(b)(6) relief. *Harman*, 678 F.2d at 482.

Similarly, in the present case Stipelcovich had already enforced the settlement agreement with the vessel interests through her separate action and consent judgment. The relief that she would be able to obtain by way of rule 60(b)(6) would be, at best, the same. As the district court pointed out, Stipelcovich had "a very marginal, very tenuous case and there were very serious questions of even insurance cover-

---

having to return the $50,000 settlement proceeds as a condition precedent to bringing her claim, not in attacking the settlement itself. This claim has no merit. Rule 60(b)(3) allows a case to be reinstated on grounds of fraud. "However, the party making the rule 60(b)(3) motion must establish by *clear and convincing* evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Montgom-*

*ery v. Hall*, 592 F.2d 278, 278–79 (5th Cir.1979) (emphasis added). Based on this standard, Stipelcovich has shown no fraud or misrepresentation entitling her to relief under rule 60(b)(3).

6. Since Stipelcovich made an election to collect the funds pursuant to the settlement agreement, it is not necessary for us to reach the issue of whether the agreement is valid.

age involved in this case." Therefore, there was not a slight abuse of discretion by the district court in its denial of the rule 60(b)(6) motion as it related to the vessel interests.

### B.

We now consider whether rule 60(b)(6) requires the suit to be reinstated as to the rig interests. Initially, we emphasize that this group has complied with all terms of the settlement agreement. Thus, in order to reopen the suit as to this group, there must be some defect affecting the validity of the agreement.

 Seamen are wards of admiralty and any release or settlement involving their rights is subject to careful scrutiny. *Wink v. Rowan Drilling Co.*, 611 F.2d 98, 100 (5th Cir.), *cert. denied*, 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980).[7] The ultimate concern in these cases, however, is not whether the seaman has received what the court believes to be adequate consideration, but rather whether the seaman relinquished his rights with an informed understanding of his rights and a full appreciation of the consequences when he executed a release. *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1161 (5th Cir.1985). The adequacy of the consideration is just one factor, *id.*, along with the adequacy of legal representation, and whether the parties negotiated in good faith, or if there is the appearance of fraud or coercion. *Borne v. A & P Boat Rentals No. 4, Inc.*, 780 F.2d 1254, 1256–57 (5th Cir.1986). The trial court must hold a hearing on the disputed issues of the validity and scope of the agreement. *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984). The district court's opinion here, however, does not fully address the validity of the settlement agreement. Absent such an express district court determination on this issue, we must review the record for ourselves. *Borne*, 780 F.2d at 1257.

 An analysis of the factors that are determinative of a fair agreement indicates that the district court did not abuse his discretion in refusing to reinstate the suit. Regarding the consideration received by Stipelcovich, it does not support a finding that she was uninformed of her rights or that she did not recognize the consequences when she settled. Although she only received $50,000 from the rig interests, that was only one part of a larger amount. In measuring the settlement consideration in a case such as this, it is necessary to examine the aggregate amount of the settlement because it may be that the parties determined that the rig interests' liability was not as great as that of the vessel interests', and therefore it was properly apportioned in different amounts.

A second factor in determining the seaman's understanding concerns whether there was representation by counsel. In this case, Stipelcovich was represented by counsel of her own choosing. Although she alleges that she was misinformed, uninformed, confused, and had a lack of business understanding, it was Stipelcovich's counsel who negotiated the settlements in apparent good faith at arms length. Moreover, Stipelcovich had the release explained to her by her attorney. This release clearly stated the terms of the agreement and that Stipelcovich was giving up all her rights against the parties. It is difficult to make out a claim of lack of understanding of rights or the consequences of releasing those rights under such facts. *See, e.g., Bass*, 749 F.2d at 1163, (the plaintiff was represented by counsel during negotiation and execution of the agreement, thus it could not be argued that he had a lack of understanding); *Borne*, 780 F.2d at 1258 ("When a seaman is acting upon independent advice and that advice is disinterested and based on a reasonable investigation . . . a settlement agreement will not be set aside.").

---

**7.** This rule also applies to family members. *See Lewis v. SS BAUNE*, 534 F.2d 1115, 1123 (5th Cir.1976).

Thus, it appears that the aggregate settlement consideration of $200,000, with $50,000 coming from the rig interests, does not support a finding that Stipelcovich was ill-informed of her rights and the consequences of her agreeing to settle. Moreover, she was acting upon independent advice by counsel, who explained the agreement and release to her. These factors do not point to a slight abuse of discretion in this case, and the district court correctly denied the rule 60(b)(6) motion as it related to the rig interests.

The order of the district court denying Stipelcovich's motion to reinstate is AFFIRMED.